UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

NATURAL RESOURCES DEFENSE COUNCIL, )
                                     )
        Plaintiff,               )
                                       )        Civil No. 08-1312 HHK
        v.                     )
                                       )
UNITED STATES CONSUMER PRODUCT     )
SAFETY COMMISSION,             )
                                       )
        Defendant.             )
_____)

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Aaron Colangelo (D.C. Bar No. 468448)
Natural Resources Defense Council
1200 New York Ave NW, Suite 400
Washington, DC 20005
Phone:  (202) 289-2376
Fax:  (202) 289-1060

Counsel for Plaintiff

Dated: August 20, 2008

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………………1

BACKGROUND  ……………………………………………………………………………2

I.      The Freedom of Information Act…………………………………………………2

II.     The FOIA Public Interest Fee Waiver Provision…………………………………2

III.    Statement of Facts………………………………………………………………3

ARGUMENT …………………………………………………………………………………6

I.      Standard of Review………………………………………………………………6

II.     NRDC Is Entitled to a Public Interest Fee Waiver for its FOIA Request……………6

      A.      Disclosure of the Requested Records Will Contribute Significantly to
             Public Understanding of the Operations or Activities of the Government……..7

      B.      NRDC Is a Non-Commercial Requester, Entitled to a Liberal
             Construction of the FOIA Fee Waiver Provision in its Favor…………………11

III.    The Commission Violated FOIA by Failing to Disclose Any Records
       Responsive to NRDC's Request.……………………………………………………12

CONCLUSION ………………………………………………………………………………..12

# TABLE OF AUTHORITIES

## CASES

*Campbell v. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998)…………………………………………9

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Health & Human Servs.*, 481 F.Supp. 2d 99 (D.D.C. 2006) …………………………………………………7, 10

*Community Legal Servs. v. U.S. Dep't of Housing & Urban Dev.*, 405 F.Supp. 2d 553 (E.D. Pa. 2005) ………………………………………………………………………11-12

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) …………………………………………..2, 12

*EPA v. Mink*, 410 U.S. 73 (1973) ……………………………………………………………………2

*Fitzgibbon v. Agency for Int'l Devel.*, 724 F.Supp. 1048 (D.D.C. 1989) …………………………9

*Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173 (10th Cir. 2005) …………………..6

*Friends of the Coast Fork v. U.S. Dep't of Interior*, 110 F.3d 53 (9th Cir. 1997)……………3, 6

*Institute for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, 290 F.Supp. 2d 1226 (D. Or. 2003) ……………………………………………………………………………………………..11

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) ……………………………………2

* *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) …………………...3, 6, 9, 11

*Judicial Watch v. U.S. Dep't of Treasury*, No. 02-566, 2005 WL 1606915 (D.D.C. July 7, 2005) ……………………………………………………………………………………10

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ………………2

*Pederson v. Resolution Trust Corp.*, 847 F. Supp. 851 (D. Colo. 1994) ………………………12

*Prison Legal News v. Lappin*, 436 F.Supp. 2d 17 (D.D.C. 2006) ………………………………9

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ……………………………………………………………………………………2

## STATUTES

5 U.S.C. § 552(a)(3)(A) ……………………………………………………………………2, 12

* 5 U.S.C. § 552(a)(4)(A)(iii) ………………………………………………………1, 3, 6, 7, 11

5 U.S.C. § 552(a)(4)(A)(vii) ……………………………………………………6

5 U.S.C. § 552(a)(6)(A)(i) ……………………………………………………..3, 12

5 U.S.C. § 552(a)(6)(A)(ii)………………………………………………………3, 5

5 U.S.C. § 552(a)(6)(C)…………………………………………………………5

5 U.S.C. § 552(a)(6)(C)(i)………………………………………………………3

5 U.S.C. § 552(b) ………………………………………………………………2, 12

## REGULATIONS

16 C.F.R. § 1015.7(a)……………………………………………………………5

16 C.F.R. § 1015.9(c)(5) ………………………………………………………11

16 C.F.R. § 1015.9(f)(5) ………………………………………………………..3

16 C.F.R. § 1015.9(f)(5)(i)………………………………………………………7

16 C.F.R. § 1015.9(f)(5)(ii) ……………………………………………………..7

16 C.F.R. § 1015.9(f)(5)(iii)……………………………………………………10

16 C.F.R. § 1015.9(f)(5)(iv) ……………………………………………………7

16 C.F.R. § 1015.9(f)(5)(v)……………………………………………………11

16 C.F.R. § 1015.9(f)(5)(vi) ……………………………………………………11

## RULES

Fed. R. Civ. P. 56 ……………………………………………………………1, 6

## LEGISLATIVE HISTORY

132 Cong. Rec. S14,298 (Sept. 30, 1986) (Sen. Leahy)………………………………11

132 Cong. Rec. S16,496 (Oct. 15, 1986) (Sen. Leahy)………………………………11

Pursuant to Federal Rule of Civil Procedure 56, plaintiff Natural Resources Defense Council (NRDC) moves for summary judgment granting NRDC a public interest fee waiver under the Freedom of Information Act and ordering the Consumer Product Safety Commission to disclose records requested more than a year ago.

## INTRODUCTION

This case concerns a FOIA request filed by NRDC in April 2007 for records from defendant Consumer Product Safety Commission. NRDC seeks information regarding the health risks posed by chemicals called phthalates in toys and other consumer products, and communications between the Commission and certain outside parties about those chemicals. NRDC is requesting this information in order to shed light on potential health harms to consumers from exposure to phthalates in everyday consumer products, and in order to discern the role that the chemical industry and toy manufacturers have played in the Commission's assessment and regulation of phthalates.

As a non-commercial requester seeking documents that are likely to contribute significantly to public understanding of government activities, NRDC is entitled to a public interest fee waiver on this FOIA request. 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested records is in the public interest. The Commission unlawfully denied NRDC's fee waiver request, however, and has since ignored NRDC's subsequent administrative appeal and refused to produce records in response to the FOIA request. Accordingly, NRDC moves for summary judgment granting a public interest fee waiver and ordering the Commission to release the requested records without further delay.

## BACKGROUND

I.    The Freedom of Information Act.

FOIA was designed to protect citizens' "right to be informed about what their Government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotations omitted). The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute was intended "to permit access to official information long shielded unnecessarily from public view and . . . to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973).

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (internal citations and quotations omitted). Specifically, once a record responsive to a FOIA request is identified, the law requires an agency to make the record "promptly available" to the requester, 5 U.S.C. § 552(a)(3)(A), unless the record is exempt from disclosure under one of the Act's nine narrow exemptions. *Id.* § 552(b). These exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

II.    The FOIA Public Interest Fee Waiver Provision.

Although FOIA permits agencies to charge search and duplication fees to requesters, it provides that fees shall be waived or reduced "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or

activities of the government and is not primarily in the commercial interest of the requester."

5 U.S.C. § 552(a)(4)(A)(iii).  The burden is on the requester to establish entitlement to a fee

waiver, but the requester satisfies its burden by presenting the agency with a "reasonably

specific" and "non-conclusory" showing that the requested disclosure is in the public interest.

*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *see also Friends of the

Coast Fork v. U.S. Dep't of Interior*, 110 F.3d 53, 55 (9th Cir. 1997).  The Commission's

regulations identify six factors that the Commission shall consider in determining whether the

requested disclosure is in the public interest and satisfies the statutory test for a fee waiver: (1)

whether the request concerns government activities; (2) whether the disclosure has informative

value; (3) whether the disclosure will contribute to an understanding of the general public; (4)

whether the disclosure is likely to contribute "significantly" to public understanding; (5) whether

the requester has a commercial interest that would be furthered by the disclosure; and (6)

whether the magnitude of any commercial interest exceeds the public interest.  16 C.F.R. §

1015.9(f)(5)(i)-(vi).

    FOIA requires that agencies make a determination on a public interest fee waiver request

within twenty business days.  5 U.S.C. § 552(a)(6)(A)(i).  If an agency denies a public interest

fee waiver request in whole or in part, the requester may file an administrative appeal.  *Id.*

§ 552(a)(6)(A)(ii).  If the agency does not respond to the appeal within twenty business days, the

requester has constructively exhausted its administrative remedies and may challenge the denial

in federal court.  *Id.* §§ 552(a)(6)(C)(i), 552(a)(6)(A)(ii).

III.    <u>Statement of Facts</u>.

    Phthalates are chemicals used in many common consumer products, including to soften

plastics in children's toys.  *See* Plaintiff's Statement of Undisputed Facts (hereinafter, SUF) ¶ 1.

3

Phthalates are known to interfere with production of the male hormone testosterone, and have been associated with reproductive abnormalities.  SUF ¶ 2.  Numerous animal studies have linked prenatal exposure to certain phthalates with decreases in testosterone, malformations of the genitalia, and reduced sperm production.  SUF ¶ 3.  The potential health risks from exposure to these chemicals in consumer products has garnered extensive news coverage.  SUF ¶ 4.  An NRDC publication in September 2007 discussing the threat of phthalates to children was widely covered in the media, including on CBS News and Time.com.  SUF ¶ 5.

On April 23, 2007, NRDC filed a FOIA request with the Commission, seeking records regarding the regulation of phthalates in children's toys and other consumer products.  SUF ¶ 6.  First, NRDC's FOIA request asked for records regarding the Commission's consideration of two petitions related to phthalates in consumer products.  SUF ¶ 7.  Second, the request sought risk assessments concerning the use of phthalates in toys and other consumer products.  SUF ¶ 8.  Third, the request sought information about three committees, comprised of chemical industry representatives and Commission staff, evaluating health risks from exposure to phthalates.   The three committees are mentioned in a June 21, 2001 memorandum available on the Commission's website.[1]  SUF ¶ 9.  Fourth, the request sought communications between the Commission and twenty listed representatives of the chemical and toy industries regarding phthalates.  SUF ¶ 11.

The FOIA request also sought a public interest fee waiver.  SUF ¶ 12.  As justification, the request noted the significant public interest in the safety of the chemicals used in consumer products, cited existing press attention on phthalates in toys in particular, and documented NRDC's established ability to disseminate records released through FOIA to a wide audience.

---

[1] The memorandum is a one-page summary of a meeting between Commission staff, employees of the Environmental Protection Agency and Food and Drug Administration, two university scientists, and representatives from the chemical companies Valent USA, Dupont, Eastman Kodak, BASF, Merck, and Syngenta.  SUF ¶ 10.

SUF ¶ 12.  In the alternative, the request sought a reduction in fees to NRDC as a representative of the news media.  SUF ¶ 13.

By letter dated January 15, 2008, and received on January 22, 2008, the Commission denied NRDC's public interest fee waiver request.  SUF ¶ 14.  The purported reason for the denial was that "the Commission has already made public through its website and reading room its information about phthalates."  SUF ¶ 15.  The Commission's letter did not provide any additional explanation for the denial.  SUF ¶ 16.  The Commission granted NRDC news media status and applied a partial waiver of fees, resulting in an estimated charge to NRDC of $1,500.  SUF ¶ 17.

NRDC appealed the Commission's public interest fee waiver denial on February 19, 2008.  SUF ¶ 18.  NRDC's appeal was timely, having been made within thirty days of receipt of the Commission's denial on January 22, 2008.  SUF ¶ 19; 16 C.F.R. § 1015.7(a) (appeal due within thirty days of receipt of denial).

The Commission's response was due March 18, 2008.  5 U.S.C. § 552(a)(6)(A)(ii) (requiring agencies to respond to administrative appeals within twenty business days).  The Commission never responded in writing to NRDC's appeal.  SUF ¶ 20.  Nor has the Commission disclosed any documents in response to NRDC's request.  SUF ¶ 21.  The matter is therefore ripe for judicial review, and no further administrative exhaustion is required.  5 U.S.C. § 552(a)(6)(C) (a requester "shall be deemed to have exhausted his administrative remedies . . . if the agency fails to comply with the applicable time limit provisions" governing its response to a FOIA request or an appeal).

**ARGUMENT**

I.    <u>Standard of Review</u>.

      Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  FOIA provides that this Court's review of an agency decision to deny a public interest fee waiver is *de novo* and is "limited to the record before the agency."  5 U.S.C. § 552(a)(4)(A)(vii).  An agency may not defend its denial of a fee waiver request with new arguments or evidence not presented during the administrative proceeding.  *See, e.g.*, *Friends of the Coast Fork*, 110 F.3d at 55 ("Our review is limited to the record before the agency, and this applies just as much to the reasons the agency offered for denial as it does to the evidence the agency offered . . . .").  The administrative record for a FOIA fee waiver determination "consists of, *inter alia*, the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal."  *Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1177 (10th Cir. 2005).  In amending FOIA to include the fee waiver provision, Congress intended that "it be 'liberally construed in favor of waivers for noncommercial requesters.'"  *Judicial Watch*, 326 F.3d at 1312 (citation omitted).

II.    <u>NRDC Is Entitled to a Public Interest Fee Waiver for its FOIA Request</u>.

      FOIA dictates that requested records be provided without charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  The requested disclosure would meet each of these requirements.  NRDC is therefore entitled to a full waiver of fees for its request.

A.    <u>Disclosure of the Requested Records Will Contribute Significantly to Public Understanding of the Operations or Activities of the Government</u>.

The first prong of the statutory fee waiver test is that disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). NRDC's FOIA request satisfies this requirement.

First, the subject of the request concerns "the operations or activities of the government." *Id*.; *see also* 16 C.F.R. § 1015.9(f)(5)(i). The FOIA request seeks information about how the Commission evaluates the safety of these chemicals in household items, and how the Commission relies on advice and information from outside entities to conduct this evaluation. The operations and activities of the government at issue include the Commission's previous consideration of two petitions concerning certain chemicals in consumer products, the Commission's assessment of the human health risk posed by phthalates, and communications between the Commission and chemical companies, toy manufacturers, and other industry representatives. SUF ¶ 22. NRDC's request therefore concerns the operations or activities of the government. *Cf. Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Health & Human Servs.*, 481 F.Supp. 2d 99, 107-08 (D.D.C. 2006) (communications between agency and public affairs firm pertain to operations of the government).

Second, the records to be disclosed will contribute significantly to public understanding of the identified government activities. 5 U.S.C. § 552(a)(4)(A)(iii); 16 C.F.R. § 1015.9(f)(5)(ii) & (iv). Many of the details of the Commission's deliberations and other activity with respect to risks posed to children by phthalates, including details of meetings with the chemical industry and toy manufacturers, are not now known to the public. SUF ¶ 23. Records regarding those agency activities are likely to be meaningfully informative about the Commission's actions with respect to phthalates. For example, NRDC's FOIA request references a one-page memo on the

7

Commission's website, and asks for more information about the creation and deliberations of three committees that are documented in that memo. SUF ¶¶ 9-10. The memorandum is titled "Log of <u>Closed</u> Meeting," (emphasis in original), and mentions three joint industry-agency committees: a Steering Committee, a "workgroup on Peroxisome Proliferators," and a "workgroup on Generic Criteria for assessing the human relevance of animal tumors." SUF ¶ 24. The purpose of the "Peroxisome Proliferator workgroup" is "to review the state of the science on the human relevance of animal tumors induced by peroxisome proliferators, such as phthalate esters." SUF ¶ 25. The purpose of the two remaining committees is not stated in the Commission's memorandum. SUF ¶ 26. The attendees at the meeting included federal agency employees, two university scientists, and representatives of the chemical companies Dupont, Eastman Kodak, Syngenta, and others. SUF ¶¶ 10, 27. Disclosure of records related to these committees, as well as other records related to the Commission's assessment of the health risks from exposure to phthalates, will contribute significantly to public understanding by providing previously undisclosed information about an issue of substantial and widespread interest.

The purported reason for the Commission's denial of NRDC's fee waiver request was that "[t]he Commission has already made public through its website and reading room its information about phthalates," SUF ¶ 15, but NRDC's request includes materials that have never been made public. SUF ¶ 28. This includes records related to the "Log of <u>Closed</u> Meeting" mentioned above, the risk assessments referenced in NRDC's FOIA request, the Commission's consideration of two prior petitions regarding phthalates, and the Commission's communications with twenty industry representatives specified in NRDC's request. SUF ¶ 28. Also, the Commission's denial letter elsewhere states that responding to NRDC's request may require twenty hours of file searching and the potential release of 15,000 pages of materials,

8

contradicting the Commission's assertion that "its information about phthalates" has already been made public.  SUF ¶ 29.

Furthermore, even if *all* information responsive to NRDC's FOIA request had already been made public (which the Commission does not assert here), that would not alone justify denying a public interest fee waiver.  Courts have held that "the mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions."  *Campbell v. Dep't of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998); *see also Judicial Watch*, 326 F.3d at 1314 (granting full public interest fee waiver even though some of the requested information had already been released and disseminated to the public); *Prison Legal News v. Lappin*, 436 F.Supp. 2d 17, 24-25 (D.D.C. 2006) (granting fee waiver because only a portion of the requested information was available to the public, and the defendant agency failed to show that it was easily accessible); *Fitzgibbon v. Agency for Int'l Devel.*, 724 F.Supp. 1048, 1051 (D.D.C. 1989) (holding that "[t]he availability of FOIA material in an agency's public reading room does not thrust the material into the public domain," and that "plaintiff's publication would be much more likely than defendants' reading rooms 'to contribute significantly to public understanding of'" the agency activities at issue).

Here, the Commission made no showing during the administrative proceeding below that the records NRDC seeks are not only already publicly available but have also been disseminated widely enough that their disclosure to NRDC would not advance public understanding. Moreover, NRDC searched the Commission's website and other public sources for the requested records, but the documents that NRDC has been able to discover do not fully respond to the FOIA request.  SUF ¶ 30.  Disclosure of the requested records would therefore contribute

significantly to public understanding of the Commission's evaluation of the health risks of phthalates in consumer products.

Third, the disclosure will contribute to the understanding of the public at large, as opposed to only a narrow segment of interested persons. 16 C.F.R. § 1015.9(f)(5)(iii). For this requirement, the courts consider "the requestor's ability and intent to effectively convey the information to the public." *Judicial Watch v. U.S. Dep't of Treasury*, No. 02-566, 2005 WL 1606915 at *5 (D.D.C. July 7, 2005); *see also Citizens for Responsibility*, 481 F.Supp. 2d at 113-16. In the original FOIA request and in the subsequent appeal, NRDC established the requisite ability and intent to convey the requested information to the general public. NRDC publishes multiple publications regarding environmental health issues that are distributed to hundreds of thousands of people. SUF ¶ 31. NRDC's staff includes scientists, doctors, and policy analysts with expertise in phthalates, chemical regulation, and the health effects of human exposure to environmental toxics. SUF ¶ 32. NRDC's staff therefore has the ability to analyze and interpret any records released by the Commission in response to this FOIA request. SUF ¶ 33. NRDC previously published a report about phthalates in one particular category of consumer products (air fresheners) that received widespread media coverage in print, online, and on television. SUF ¶ 34. NRDC also has a decades-long track record of disseminating information obtained through FOIA to local and national news media, SUF ¶ 35, and expressed its intent to do the same here. SUF ¶ 36. In its denial letter, the Commission did not contest NRDC's demonstrated ability and intent to disseminate the requested records to a broad public audience. SUF ¶ 37.

NRDC's request is therefore in the public interest because it would contribute significantly to public understanding of the Commission's evaluation and regulation of phthalates in consumer products.

B.    NRDC Is a Non-Commercial Requester, Entitled to a Liberal Construction of the
FOIA Fee Waiver Provision in its Favor.

The second prong of the statutory fee waiver test is that disclosure of the information

sought "is not primarily in the commercial interest of the requester."  5 U.S.C. §

552(a)(4)(A)(iii); *see also* 16 C.F.R. § 1015.9(f)(5)(v) & (vi).  NRDC's FOIA request satisfies

this requirement as well.

NRDC has no commercial interest that would be furthered by its FOIA request.  *See* 16

C.F.R. § 1015.9(c)(5) (definition of "commercial use request").  NRDC is a non-profit, public

interest environmental and public health organization.  SUF ¶ 38.  NRDC does not have any

commercial, trade, or profit interest.  SUF ¶ 39.  As stated in the FOIA request, NRDC seeks

these records not for any commercial use, but for public distribution.  SUF ¶ 40.  Accordingly,

NRDC is a non-commercial requester.

The FOIA fee waiver provision was amended in 1986 to make fee waivers easier to

obtain, particularly for non-commercial requesters.  *See* 132 Cong. Rec. S14,298 (Sept. 30, 1986)

(Sen. Leahy); *see also Judicial Watch*, 326 F.3d at 1315; *Institute for Wildlife Prot. v. U.S. Fish

& Wildlife Serv.*, 290 F.Supp. 2d 1226, 1232 (D. Or. 2003) ("Congress intended independent

researchers, journalists, and public interest watchdog groups to have inexpensive access to

government records in order to provide the type of public disclosure believed essential to our

society.").  According to Senator Leahy, one of the principal architects of the legislation, the

main purpose of the fee waiver amendment was "to remove the roadblocks and technicalities

which have been used by various Federal agencies to deny waivers or reductions of fees under

the FOIA."  132 Cong. Rec. S16,496 (Oct. 15, 1986) (Sen. Leahy).  The D.C. Circuit and other

courts have repeatedly cited this statement as evidence of the legislative intent behind the FOIA

fee waiver provision.  *See, e.g., Judicial Watch*, 326 F.3d at 1315; *Community Legal Servs. v.*

*U.S. Dep't of Housing & Urban Dev.*, 405 F.Supp. 2d 553, 555 (E.D. Pa. 2005); *Pederson v. Resolution Trust Corp.*, 847 F. Supp. 851, 856 (D. Colo. 1994). As a non-commercial requester, NRDC is entitled to a liberal construction of the fee waiver provision in its favor.

III.    The Commission Violated FOIA by Failing to Disclose Any Records Responsive to
        NRDC's Request.

NRDC served this FOIA request on April 23, 2007. SUF ¶ 6. The Commission was required to make a final determination on NRDC's request by May 21, 2007, 5 U.S.C. § 552(a)(6)(A)(i), and to produce records "promptly" thereafter. *Id.* § 552(a)(3)(A). To date, the Commission has failed to produce a single document in response. SUF ¶ 21. The Commission has violated the statutory deadline by more than a year. NRDC is entitled to summary judgment as a result, and the Court should order the Commission to produce responsive records without further delay.[2]

## CONCLUSION

For the reasons set forth above, NRDC respectfully asks the Court to grant its motion for summary judgment. The Court should order the Commission to grant NRDC a full fee waiver with respect to NRDC's April 23, 2007 FOIA request, because disclosure of the requested records is in the public interest. The Court should also direct the Commission to produce all responsive records within twenty days, because the Commission has missed the statutory deadline to respond by more than a year.

---

[2] FOIA permits agencies to withhold a document from disclosure only if the document fits in one of the Act's nine narrow exemptions. 5 U.S.C. § 552(b). These exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. at 361. The Commission has not asserted that any responsive documents are exempt from disclosure. If the Commission does claim that certain documents are exempt pursuant to one of these nine exceptions, further briefing may be necessary to evaluate the legitimacy of any withholdings.

Respectfully submitted,

*/s/  Aaron Colangelo*
Aaron Colangelo (D.C. Bar No. 468448)
Natural Resources Defense Council
1200 New York Ave NW, Suite 400
Washington, DC 20005
Phone:  (202) 289-2376
Fax:  (202) 289-1060

Counsel for Plaintiff

Dated: August 20, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served a true and correct copy of **Plaintiff's Motion for Summary Judgment and Memorandum of Points and Authorities in Support** via first-class mail on this date, August 20, 2008, to the following counsel:

     Cheryl Falvey, General Counsel
     U.S. Consumer Product Safety Commission
     4330 East West Highway
     Bethesda, MD 20814

     Civil Process Clerk
     U.S. Attorney's Office for the District of Columbia
     555 Fourth Street NW
     Washington, DC 20530


*/s/ Aaron Colangelo*
Aaron Colangelo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
NATURAL RESOURCES DEFENSE COUNCIL,    )
                                       )
            Plaintiff,                 )
                                       )        Civil No. 08-1312 HHK
            v.                         )
                                       )
UNITED STATES CONSUMER PRODUCT         )
SAFETY COMMISSION,                     )
                                       )
            Defendant.                 )
_____)

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff the Natural Resources Defense Council respectfully submits this Statement of

Undisputed Material Facts in support of its motion for summary judgment.  This statement is

based on the Declaration of Aaron Colangelo and the attached exhibits.  Pursuant to Fed. R. Civ.

P. 56, there is no genuine issue as to the following material facts:

| **UNDISPUTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 1.        Phthalates are chemicals used in many common consumer products, including to soften plastics in children's toys. | Colangelo Decl. Exh. C at 8 (attachment to FOIA appeal at page 1). |
| 2.        Phthalates are known to interfere with production of the male hormone testosterone, and have been associated with reproductive abnormalities. | Colangelo Decl. Exh. C at 5, 8 (attachment to FOIA appeal at page 1). |

| | |
|---|---|
| 3.      Numerous animal studies have linked prenatal exposure to certain phthalates with decreases in testosterone, malformations of the genitalia, and reduced sperm production. | Colangelo Decl. Exh. C at 8 (attachment to FOIA appeal at page 1). |
| 4.      The potential health risks from exposure to these chemicals in consumer products has garnered extensive news coverage. | Colangelo Decl. Exh. A at 6 & n.5. |
| 5.      An NRDC publication in September 2007 discussing the threat of phthalates to children was widely covered in the media, including on CBS News and Time.com. | Colangelo Decl. Exh. C at 5 & n.5. |
| 6.      On April 23, 2007, NRDC filed a FOIA request with the Commission, seeking records regarding the regulation of phthalates in children's toys and other consumer products. | Colangelo Decl. Exh. A. |
| 7.      NRDC's FOIA request asked for records regarding the Commission's consideration of two petitions related to phthalates in consumer products. | Colangelo Decl. Exh. A at 2. |
| 8.      NRDC's FOIA request sought risk assessments concerning the use of phthalates in toys and other consumer products. | Colangelo Decl. Exh. A at 2. |

9.      NRDC's FOIA request sought information about three committees, comprised of chemical industry representatives and Commission staff, evaluating health risks from exposure to phthalates. The three committees are mentioned in a June 21, 2001 memorandum available on the Commission's website.

Colangelo Decl. Exh. A at 2-3.

10.      The June 21, 2001 memorandum is a one-page summary of a meeting between Commission staff, employees of the Environmental Protection Agency and Food and Drug Administration, two university scientists, and representatives from the chemical companies Valent USA, Dupont, Eastman Kodak, BASF, Merck, and Syngenta.

Colangelo Decl. Exh. D.

11.      NRDC's FOIA request sought communications between the Commission and twenty listed representatives of the chemical and toy industries regarding phthalates in toys and other consumer products.

Colangelo Decl. Exh. A at 3.

12.      NRDC's FOIA request sought a public interest fee waiver, noting the significant public interest in the safety of the chemicals used in consumer products, citing existing press attention on phthalates in toys in particular, and documenting NRDC's established ability to disseminate records released through FOIA to a wide audience.

Colangelo Decl. Exh A at 4-7.

13.      In the alternative, NRDC's FOIA request sought a reduction in fees to NRDC as a representative of the news media.

Colangelo Decl. Exh. A at 7-8.

| | |
|---|---|
| 14.       By letter dated January 15, 2008, and received on January 22, 2008, the Commission denied NRDC's public interest fee waiver request. | Colangelo Decl. Exh. B. |
| 15.       The purported reason for the denial was that "the Commission has already made public through its website and reading room its information about phthalates." | Colangelo Decl. Exh. B at 1. |
| 16.       The Commission's letter did not provide any additional explanation for the denial. | Colangelo Decl. Exh. B. |
| 17.       The Commission granted NRDC news media status and applied a partial waiver of fees, resulting in an estimated charge to NRDC of $1,500. | Colangelo Decl. Exh. B at 1. |
| 18.       NRDC appealed the Commission's public interest fee waiver denial on February 19, 2008. | Colangelo Decl. Exh. C. |
| 19.       NRDC's appeal was timely, having been made within thirty days of receipt of the Commission's fee waiver denial on January 22, 2008. | Colangelo Decl. Exh. C at 2. |
| 20.       The Commission never responded in writing to NRDC's appeal. | Colangelo Decl. ¶ 6. |

| | |
|---|---|
| 21.     The Commission has not disclosed any documents in response to NRDC's request. | Colangelo Decl. ¶ 7. |
| 22.     The operations and activities of the government at issue in the records requested by NRDC include the Commission's previous consideration of two petitions concerning certain chemicals in consumer products, the Commission's assessment of the human health risk posed by phthalates, and communications between the CPSC and chemical companies, toy manufacturers, and other industry representatives. | Colangelo Decl. Exh C at 3. |
| 23.     Many of the details of the Commission's deliberations and other activity with respect to risks posed to children by phthalates, including details of meetings with the chemical industry and toy manufacturers, are not now known to the public. | Colangelo Decl. Exh C at 3. |
| 24.     The Commission's June 21, 2001 memorandum, available on the agency's website, is titled "Log of <u>Closed</u> Meeting," (emphasis in original), and mentions three joint industry-agency committees: a Steering Committee, a "workgroup on Peroxisome Proliferators," and a "workgroup on Generic Criteria for assessing the human relevance of animal tumors." | Colangelo Decl. Exh. D. |

| | |
|---|---|
| 25.     The purpose of the "Peroxisome Proliferator workgroup," as stated in the Commission's memorandum, is "to review the state of the science on the human relevance of animal tumors induced by peroxisome proliferators, such as phthalate esters." | Colangelo Decl. Exh. D. |
| 26.     The purpose of the two remaining committees is not stated in the Commission's memorandum. | Colangelo Decl. Exh. D. |
| 27.     The attendees at the June 21, 2001 meeting included federal agency employees, two university scientists, and representatives of the chemical companies Dupont, Eastman Kodak, Syngenta, and others. | Colangelo Decl. Exh. D. |
| 28.     NRDC's request includes materials that have never been made public, including records related to the "Log of Closed Meeting" mentioned above, the risk assessments referenced in NRDC's FOIA request, the Commission's consideration of two prior petitions regarding phthalates, and the Commission's communications with twenty industry representatives specified in NRDC's request. | Colangelo Decl. Exh. C at 2-3, Exh. D at 1. |
| 29.     The Commission's denial letter states that responding to NRDC's request may require twenty hours of file searching and the potential release of 15,000 pages of materials. | Colangelo Decl. Exh. B at 1. |

| | |
|---|---|
| 30.     NRDC searched the Commission's website and other public sources for the requested records, but the documents that NRDC has been able to discover do not fully respond to the FOIA request. | Colangelo Decl. Exh C at 4. |
| 31.     NRDC publishes multiple publications regarding environmental health issues that are distributed to hundreds of thousands of people. | Colangelo Decl. Exh. A at 6 n.4. |
| 32.     NRDC's staff includes scientists, doctors, and policy analysts with expertise in phthalates, chemical regulation, and the health effects of human exposure to environmental toxics. | Colangelo Decl. Exh. A at 5 n.3. |
| 33.     NRDC's staff therefore has the ability to analyze and interpret any records released by the Commission in response to this FOIA request. | Colangelo Decl. Exh. A at 5 n.3. |
| 34.     NRDC previously published a report about phthalates in one particular category of consumer products (air fresheners) that received widespread media coverage in print, online, and on television. | Colangelo Decl. Exh. C at 5 & n.5. |
| 35.     NRDC has a decades-long track record of disseminating information obtained through FOIA to local and national news media. | Colangelo Decl. Exh. A at 4-6 & n.2. |
| 36.     NRDC expressed its intent to disseminate information obtained through this FOIA request to local and national news media. | Colangelo Decl. Exh. A at 1, 5-6. |

| | |
|---|---|
| 37.          In its denial letter, the Commission did not contest NRDC's demonstrated ability and intent to disseminate the requested records to a broad public audience. | Colangelo Decl. Exh. B. |
| 38.          NRDC is a non-profit, public interest environmental and public health organization. | Colangelo Decl. Exh. A at 1. |
| 39.          NRDC does not have any commercial, trade, or profit interest. | Colangelo Decl. Exh. A at 7, Exh. C at 6. |
| 40.          NRDC seeks these records for public dissemination and not for any commercial use. | Colangelo Decl. Ex. A at 7. |

Respectfully submitted,

*/s/  Aaron Colangelo*
Aaron Colangelo (D.C. Bar No. 468448)
Natural Resources Defense Council
1200 New York Ave NW, Suite 400
Washington, DC 20005
Phone:  (202) 289-2376
Fax:  (202) 289-1060

Counsel for Plaintiff

Dated: August 20, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served a true and correct copy of this **Statement of**

**Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment** via

first-class mail on this date, August 20, 2008, to the following counsel:

> Cheryl Falvey, General Counsel
> U.S. Consumer Product Safety Commission
> 4330 East West Highway
> Bethesda, MD 20814
>
> Civil Process Clerk
> U.S. Attorney's Office for the District of Columbia
> 555 Fourth Street NW
> Washington, DC 20530

*/s/ Aaron Colangelo*
Aaron Colangelo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

NATURAL RESOURCES DEFENSE COUNCIL,  )
)
       Plaintiff,                                       )
)      Civil No. 08-1312 HHK
       v.                                                  )
)
UNITED STATES CONSUMER PRODUCT          )
SAFETY COMMISSION,                              )
)
       Defendant.                                   )
_____)

**DECLARATION OF AARON COLANGELO IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I, Aaron Colangelo, make the following declaration:

      1.      I am an attorney for the Natural Resources Defense Council (NRDC), the plaintiff

in the above-captioned case.  I am submitting this declaration in support of NRDC's motion for

summary judgment.

      2.      Attached as Exhibit A is a true and correct copy of NRDC's April 23, 2007

Freedom of Information Act Request to the Consumer Product Safety Commission.

      3.      Attached as Exhibit B is a true and correct copy of the Commission's January 15,

2008 response to NRDC's FOIA request.

      4.      Attached as Exhibit C is a true and correct copy of NRDC's February 19, 2008

Appeal of Fee Waiver Denial and excerpts of the attachments filed in support of that appeal.

      5.      Attached as Exhibit D is a true and correct copy of a memorandum titled "Log of

Closed Meeting," dated June 21, 2001, available online at www.cpsc.gov/library/foia/meetings/

mtg01/PeroxisomeProliferator.pdf.

6.      The Commission never responded in writing to NRDC's February 19, 2008

Appeal of Fee Waiver Denial.

7.      The Commission has not disclosed any documents in response to NRDC's April

23, 2007 FOIA request.


Pursuant to 28 U.S.C. § 1746, I declare and affirm under penalty of perjury that the foregoing is

true and correct.


_____

Aaron Colangelo

Executed in Washington, D.C. this 20th day of August, 2008.

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served a true and correct copy of this **Declaration of**

**Aaron Colangelo in Support of NRDC's Motion for Summary Judgment** via first-class mail

on this date, August 20, 2008, to the following counsel:

Cheryl Falvey, General Counsel
U.S. Consumer Product Safety Commission
4330 East West Highway
Bethesda, MD 20814

Civil Process Clerk
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW
Washington, DC 20530

*/s/ Aaron Colangelo*
Aaron Colangelo



NATURAL RESOURCES DEFENSE COUNCIL

April 23, 2007

**By Federal Express and E-mail to cpsc-os@cpsc.gov**
FOIA REQUEST
Office of the Secretary
U.S. Consumer Product Safety Commission
4330 East West Highway
Bethesda, MD 20814

Re:   Request for Records Concerning Phthalates in Children's Products

Dear Sir or Madam:

On behalf of the Natural Resources Defense Council, Inc. ("NRDC"), I write to request the disclosure of records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and Consumer Product Safety Commission ("CPSC") implementing regulations, 16 C.F.R. part 1015.

## I.    The Requester

NRDC is a national, non-profit public interest organization that engages in public education, policy analysis, scientific research, advocacy, and litigation on behalf of its members and the public on environmental issues. NRDC is dedicated to the preservation, protection, and defense of public health and the environment. NRDC has more than 650,000 members nationwide, and routinely provides and disseminates information on health and environmental issues to its members, the public, and the media through print and online communications. NRDC intends to make newsworthy information disclosed pursuant to this request directly available to the public.

## II.   Description of Requested Records

NRDC requests any and all records[1] created from January 1, 1997 through the present that were prepared, received, transmitted, collected

---

[1] The term "records" is used herein to mean anything within the meaning of that word or its singular form under the FOIA. In particular, the term includes, but is not limited to, all writings (handwritten, typed, electronic, or otherwise produced,

U.S. Consumer Products Safety Commission
April 23, 2007
Page 2 of 9

and/or maintained by the CPSC or any of its employees or contractors
relating or referring to the following:

1.  The processing of, consideration of, and response to
    Petition No. HP 99-01, concerning children's products manufactured
    with polyvinyl chloride.

2.  The processing of, consideration of, and response to
    a June 6, 2001 submission from Rick Hind, Greenpeace Toxics
    Campaign, to the CPSC concerning vinyl consumer products and use
    of phthalates in consumer products.

3.  Any risk assessments concerning phthalates conducted by or for, or
    submitted to, or possessed by, the CPSC, including without
    limitation:

    a.  The Risk of Toxicity Associated with Exposure to Diisononyl
        Phthalate (DINP) in Children's Products (1998);

    b.  Report to the U.S. Consumer Product Safety Commission by
        the Chronic Hazard Advisory Panel on Diisononyl Phthalate
        (DINP) (2001); and

    c.  Updated Risk Assessment of Oral Exposure to Diisononyl
        Phthalate (DINP) in Children's Products (2002).

4.  The operations, functions, deliberations, activities, or
    communications of three committees (known as the Steering
    Committee, the Peroxizome Proliferator Workgroup, and the
    Generic Criteria for assessing the human relevance of animal
    tumors) described in a June 21, 2001 memorandum available on the
    CPSC's website at:

---

reproduced, or stored) in the possession of the CPSC or its employees or contractors,
including, without limitation, correspondence, minutes of meetings, memoranda, notes,
data, videotapes, audio tapes, e-mails, notices, telephonic facsimiles, charts, tables,
presentations, orders, agreements, analyses, reports, and filings. The term "records"
includes draft and other non-final documents. For purposes of this request, "records" do
include e-mails – stored either electronically or in paper form – within the immediate
control of any employee possessing information responsive to this request – but do not
otherwise include e-mails stored on back-up tapes or other similar long-term, permanent
storage devices in a central location.

U.S. Consumer Products Safety Commission
April 23, 2007
Page 3 of 9

www.cpsc.gov/library/foia/meetings/mtg01/PeroxisomeProliferator.pdf.

5.    Any meetings, telephone conversations, or other communications at or through which any of the following subjects were discussed:

    i.     phthalates;
    ii.    polyvinyl chloride;
    iii.   chemical risks associated with children's toys (other than chemical risks associated solely with lead in children's toys);
    iv.   peroxisome proliferators;
    v.    reproductive toxicity; and/or
    vi.   alternatives to phthalates,

if such meetings, telephone conversations, or other communications occurred between or among any member(s) or employee(s) of the CPSC and any employee or other representative of any of the following:

    a.    American Chemistry Council;
    b.    BASF Corporation;
    c.    California Chamber of Commerce;
    d.    Chemical Manufacturers Association;
    e.    Dupont;
    f.    Eastman Chemical;
    g,    EHB Consulting Ltd.;
    h.    Exxon or Exxon Chemical Co.;
    i.    Hasbro Inc.;
    j.    International Life Sciences Institute;
    k.    Latham and Watkins;
    l.    Locker Greenberg & Brainin;
    m.   Mattel, Inc.;
    n.    Phthalates Ester Panel;
    o.    Rohm and Haas;
    p.    Society of the Plastics Industry;
    q.    Solutia Inc.;
    r.    The Jefferson Group;
    s.    Toy Industry Association, Inc.; and
    t.    U.S. Chamber of Commerce.

U.S. Consumer Products Safety Commission
April 23, 2007
Page 4 of 9

## III.  Request for Fee Waiver

NRDC requests a waiver of all fees and costs related to this request.  Under the FOIA, responsive records must be furnished without charge "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii); *see also* 16 C.F.R. § 1015.9(f)(4).  As we describe below, the disclosure we seek meets this standard.  In addition, NRDC qualifies as a media requester entitled to a reduction of fees under the FOIA.

A.  Disclosure Is In The Public Interest

1.  Disclosure Will Contribute To Public Understanding Of Government Activities

The requested information is "likely to contribute significantly to public understanding of the operations or activities of the government," 5 U.S.C. § 552(a)(4)(A)(iii), satisfying each of the requirements set forth in CSPC regulations, *see* 16 C.F.R. § 1015.9(f)(5).

First, the records described in Section II pertain to and would reveal "the operations or activities of the government."  16 C.F.R. § 1015.9(f)(5)(i).  In particular, these records concern the CPSC's activities with respect to risks posed to children by phthalates in consumer products. Second, responsive records would "contribute to public understanding."  16 C.F.R. § 1015.9(f)(5)(ii).  Many of the details of CPSC deliberations and other activity with respect to risks posed to children by phthalates in consumer products, including for example the details of meetings with representatives of the chemical and consumer products industries, have not been publicized and are not known to the public.  Third, disclosing the requested records to NRDC would "contribute to public understanding."  16 C.F.R. § 1015.9(f)(5)(iii).  As illustrated by numerous news articles and publications based on information obtained by prior NRDC FOIA requests, NRDC effectively conveys to the public relevant government information.[2]  NRDC staff

---

[2] For example, information obtained by NRDC through FOIA requests resulted in the following articles, among many others:  Felicity Barringer, "Science Panel Issues Report on Exposure to Pollutant," *New York Times*, January 11, 2005; Katharine Q. Seelye, "Draft of Air Rule is Said to Exempt Many Old Plants," *New York Times*, August 22, 2003; Don Van Natta, Jr., "E-Mail Suggests Energy Official Encouraged Lobbyist on Policy," *New York Times*, April 27, 2002; Elizabeth Shogren, "Charges Fly Over Science Panel Pick," *Los Angeles Times*, April 4, 2002; Steve LaRue, "EPA Aims to Cut Levels

U.S. Consumer Products Safety Commission
April 23, 2007
Page 5 of 9

members have developed an expertise in analyzing and synthesizing government information, and expend ongoing effort to understand, inform the public, and protect children from the health threats posed by phthalates.[3]  NRDC will

---

of Arsenic in Well Water," *San Diego Union-Tribune*, June 5, 2000; Walter Pincus, "Study Says U.S. Secretly Placed Bombs: Cold War Deployments Affected Mostly Allies," *Washington Post*, October 20, 1999; D'Vera Cohn, "Tap Water Safeguards Still Stalled: City Failed to Tell Some Residents of Excess Lead Contamination," *Washington Post*, April 18, 1996; Larry Liebert, "Oil Testimony Reportedly Quashed; Environmentalists Say Federal Experts Pressured by Bush," *San Francisco Chronicle*, October 5, 1989; Eric Lichtblau, "Federal Report Blasts Offshore Oil Studies," *Los Angeles Times*, June 4, 1988; Sandra Sugawara, "Lead in Air is Undermeasured, EPA Section Chief's Memo Says," *Washington Post*, July 11, 1982.

NRDC also publishes reports and books based in part on information obtained from FOIA requests.  For example, NRDC published a report on impacts of manure pollution, *Spills & Kills* (Aug. 2000); five databooks between 1984 and 1994 describing the history of nuclear weapons programs in the United States, Soviet Union, Britain, France and China; a report on the custody and deployment of nuclear weapons by Robert S. Norris, William M. Arkin, and William Burr, entitled "Where They Were," *Bulletin of Atomic Scientists* (Nov/Dec 1999); and the <u>Nuclear Notebook</u>, published in each issue of the *Bulletin of Atomic Scientists*, *see e.g.*, "U.S. Nuclear Forces, 2002," *Bulletin of Atomic Scientists*, May/June 2002.

[3]  NRDC includes on its staff a number of scientists with special expertise in children's health and endocrine disruptors.  For example, NRDC senior scientist Dr. Gina Solomon, M.D., M.P.H., previously served on a Federal Advisory Committee on endocrine disrupting chemicals, is co-author of the award-winning book, *Generations at Risk: Reproductive Health and the Environment* (MIT Press 1999), and is Associate Director of the University of California at San Francisco Pediatric Environmental Health Specialty Unit.  NRDC science fellow Dr. Sarah Janssen, M.D., Ph.D., M.P.H., has a specialty in reproductive toxicity of chemicals.  Drs. Solomon and Janssen are also co-authors of Gina M. Solomon & Sarah Janssen, **"**Talking with Patients and the Public About Endocrine Disrupting Chemicals," in *Handbook of Endocrine Disrupting Chemicals*. (A. Gore, ed.; Humana Press, Totowa, NJ. (in press)).

NRDC's magazine, *On Earth*, recently published a special report on phthalates and other endocrine disruptors.  *See* "Bad Chemistry:  A Special Report," *On Earth* (Winter 2006), *available at* http://www.nrdc.org/onearth/06win/chem.pdf.  NRDC also maintains information for the public about endocrine disruptors on its website.  *See* http://www.nrdc.org/health/effects/qendoc.asp.  NRDC has also presented congressional testimony on the health risks of environmental contamination by endocrine disruptors. *See, e.g.*, Hearings of the House Govt. Reform Comm., *Ova Pollution in the Potomac*, at 44 (Oct. 4, 2006), *available at* http://www.mwcog.org/uploads/committee-documents/tVhbWFc20061106160921.pdf.

disseminate any newsworthy information in the released records, and its analysis of such records, to its members and to the broader public.[4] The intensity of media coverage concerning children's potential exposure to, and health risks from, endocrine disruptors in children's products demonstrates public curiosity and alarm concerning the subject matter of our inquiry.[5] Fourth, the requested

---

[4] NRDC maintains several channels to disseminate information, including the results of this request, to the public widely, including numerous and varied publications, educational programs, media initiatives, and public interest litigation. For example, NRDC's website (www.nrdc.org) is updated daily and draws approximately 2.5 million page views and approximately 700,000 visits per month. NRDC publishes and distributes *Nature's Voice* five times a year to approximately 650,000 members nationwide. NRDC also publishes a magazine, *On Earth*, which is distributed to more than 150,000 subscribers and which is also available nationwide at newsstands and bookstores. *On Earth* is also available online free of charge on NRDC's website; the current issue is posted at http://www.nrdc.org/onearth/07spr/default.asp. NRDC sends newsletters and alerts to more than 550,000 individuals several times per month. A selection of the current alerts is posted at http://www.nrdc.org/action/. NRDC's *Earth Action* e-mail list has more than 165,000 subscribers receiving information biweekly on urgent environmental issues. NRDC sends its *Legislative Watch* bulletin to more than 30,000 individuals biweekly during Congressional sessions. *This Green Life* is an electronic journal on environmentally sustainable living distributed by e-mail to 55,000 subscribers. In addition, NRDC issues press releases and participates in press conferences and interviews with reporters and editorial writers. Finally, NRDC employees provide Congressional testimony, participate in and organize conferences, and appear on television, radio programs, webcasts, and in numerous and various national newspapers, newsletters, magazines, other periodicals, and books. NRDC has more than 20 staff positions devoted to communications work. *See* http://www.nrdc.org/about/staff.asp.

[5] *See, e.g.*, Mathew Wald, "Chemical Element in Vinyl Toys Causes Liver Damage in Lab Rats," *New York Times* A20 (Nov. 13, 1998); Holcomb B. Noble, "Barbie and Other Toys Go on an Oil Free Diet," *New York Times* (Dec. 21, 1999); Holcomb B. Noble, "A Debate Over Safety of Softeners for Plastics," *New York Times* (Sept. 28, 1999); Charlie Goodyear, "Board bans chemicals that may harm infants," *San Francisco Chronicle,* (June 7, 2006); Jane Kay, "City sued over ban on children's products using suspect chemicals Plaintiffs say state law pre-empts the local ordinance," *San Francisco Chronicle,* (Oct. 26, 2006); Jane Kay, "San Francisco prepares to ban certain chemicals in products for kids, but enforcement will be tough -- and toymakers question necessity," *San Francisco Chronicle* (Nov. 19, 2006); Jane Kay, "European manufacturers adjusting to chemical ban," *San Francisco Chronicle* (Nov. 19, 2006); "Dangerous toys lurking in stores: Despite government regulations and warning labels, some toys are not suitable for young children," *Detroit Free Press* (Nov. 23 2006);

U.S. Consumer Products Safety Commission
April 23, 2007
Page 7 of 9

disclosure would be "likely to contribute significantly to public understanding of government operations or activities." 16 C.F.R. § 1015.9(iv). The records requested and disseminated by NRDC will help illuminate the process by which the CPSC makes critical decisions regarding the safety of and public health risks associated with children's toys. Finally, NRDC has no commercial interest in this matter. 16 C.F.R. § 1015.9(v) & (vi). NRDC is a not-for-profit organization and the records requested are not sought for commercial use, but for public dissemination, as discussed *supra* at 4-6.

Given the ongoing public interest in risks to children from phthalates, and the fact that furnishing the information will benefit primarily the public as opposed to the requester, fees and costs related to this request should be waived. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'"). In addition, for reasons described below, NRDC is a representative of the media seeking information in the public interest and therefore qualifies for a fee reduction even if a fee waiver were not available.

B. NRDC Is A Media Requester

Even if the agency denies a public interest waiver of all costs and fees, NRDC is a representative of the news media entitled to a reduction of fees under

---

"Danger in Toyland: San Francisco's ban on toxic toys - including such classics as the rubber ducky - highlights the lurking danger of plastic contaminants," *Time Magazine* (Dec. 3, 2006); "San Francisco sued over ban of chemical-laden children's products," *Envtl. Science & Tech.* (Jan. 3, 2007); Jane Kay, "SF Chronicle: Changes sought in SF's proposed 'toxic toy' law," *San Francisco Chronicle* (Jan. 8, 2007); Jane Kay, "Proposed amendments would limit 'toxic toys' law," (Jan. 24, 2007); "One Great Big Plastic Hassle: Today, phthalates are one of the top offenders in a group of 70 suspected endocrine disrupting chemicals that we spray in our homes and yards and use in our makeup, nail polish, detergents, flame retardants, plastic bottles, metal food cans and even children's toys," *Whole Life Times* (Feb. 18, 2007); "SF lawmaker wants ban for chemicals in baby toys; at the California state capitol, there's mounting political pressure to ban bisphenol A and phthalates found in toys and baby products," San Jose NBC 11, (Feb. 28, 2007); Jane Kay, "Lawmaker wants state to follow city's lead with 'toxic toy' ban -- Bill would bar certain chemicals in products," *San Francisco Chronicle* (Feb. 28, 2007); Armanda Gardner, "Are Common Chemicals Feeding Obesity Epidemic?" *Washington Post* (Mar. 15, 2007); Jane Kay, "Supervisors tweak ordinance banning 'toxic' child products/City will test up to 100 items a year, list those illegal to sell," *San Francisco Chronicle* (Apr. 11, 2007); *see also* William K. Stevens, "Pesticides May Leave Legacy of Hormonal Chaos," *New York Times* (Aug. 23, 1994).

U.S. Consumer Products Safety Commission
April 23, 2007
Page 8 of 9

the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), 16 C.F.R. §1015.9(d)  ("The following
requests may incur charges only for duplication: . . .  a request from a
representative of the news media.").  *See generally Elec. Privacy Info. Ctr. v.
United States Dep't of Defense*, 241 F. Supp. 2d 5, 11-14 (D.D.C. 2003) (a "non-
profit public interest organization" qualified as a representative of the news media
under FOIA where it published books and newsletters on issues of current interest
to the public).

Under the CPSC's implementing regulations, a "representative of the news
media" includes "any person or *organization which regularly publishes or
disseminates news to the public*, in print or electronically."  16 C.F.R. §
1015.9(c)(8) (emphasis added).  NRDC fits squarely within this classification.  As
more fully described above, NRDC publishes a quarterly magazine, *On Earth*, as
well as a periodic newsletter for its more than 650,000 members nationally; issues
regular public reports and analyses; and maintains a free online library of reports
and analyses.  NRDC staff members are also regular contributors to numerous
newspapers, magazines, law reviews, and scholarly journals.  Information
obtained as a result of this request will, if appropriately newsworthy, be
disseminated through one or more of these or other suitable channels.  Due to
these activities, NRDC qualifies as a representative of the media with regard to
FOIA requests and is entitled to a fee reduction even if a fee waiver were not
otherwise appropriate.

## IV.    Willingness to Pay Fees Under Protest

Please provide the records described above irrespective of the status and
outcome of your evaluation of NRDC's fee waiver request.  In order to prevent
delay in the CPSC's provision of the requested records, NRDC states that it will, if
necessary and under protest, pay fees in accordance with 16 C.F.R. § 1015.9.
Please consult with me, however, before undertaking any action that would cause
the fee to exceed $300.  No payment made under protest will constitute any waiver
of NRDC's right to seek administrative or judicial review of any denial of its fee
waiver request.

## V.    Conclusion

We trust that the CPSC will comply with all applicable requirements set
forth in the FOIA and CPSC regulations, including the relevant deadlines and the
CPSC's disclosure policy.  *See* 5 U.S.C. § 552(a)(6)(A)(i); 16 C.F.R. §§ 1015.5,
1015.15(b).  Please produce the records above by sending them to my attention at
the address appearing on the first page of this letter.  Please produce records on a

U.S. Consumer Products Safety Commission
April 23, 2007
Page 9 of 9

rolling basis; at no point should the CPSC's search for – or deliberations concerning – certain records delay the production of others that the agency has already retrieved and elected to produce.

If the CPSC denies this request in whole or in part, we ask that you justify any such denial by reference to specific exemptions embedded in the FOIA. *See generally* 16 C.F.R. § 1015.6. NRDC specifically requests the release of all segregable portions of otherwise exempt material. NRDC reserves the right to appeal a decision to withhold any information or to deny a waiver of fees.

Thank you for your prompt attention to this matter.

Sincerely,

Michael E. Wall
Senior Attorney
Natural Resources Defense Council, Inc.



## U.S. CONSUMER PRODUCT SAFETY COMMISSION
### 4330 EAST WEST HIGHWAY
### BETHESDA, MARYLAND 20814-4408

Todd A. Stevenson
Director • Office of the Secretary
Division of Information Management • Office of Information and Technology

Tel: 301-504-6836
Fax: 301-504-0127
Email: tstevenson@cpsc.gov

January 15, 2008

**CERTIFIED MAIL – RETURN RECEIPT**

Michael E. Wall
Senior Attorney
Natural Resources Defense Council, Inc.
111 Sutter Street, 20th Floor
San Francisco, CA 94104

Re: FOIA Request S7040076: Records Concerning Phthalates in Children's Products

Dear Mr. Wall:

This regards your letter dated April 23, 2007 that seeks a full waiver of any fees that may be incurred in the processing of the referenced Freedom of Information Act ("FOIA") request to the U. S. Consumer Product Safety Commission ("Commission"). In your letter you request a full waiver of the fees by stating that the records are being sought for your efforts to reveal the operations or activities of the government and inform the public about the CPSC deliberations with respect to risks posed by phthalates in consumer products. The Commission has already made public through its website and reading room its information about phthalates, including meetings, briefing materials and research reports. We deny your request for a full waiver of the fees. However, we will provide a partial waiver of the fees, applying the news media waiver.

The Commission's FOIA regulations at 16 C.F.R. § 1015.9 provide for the charging of fees resulting from the processing of FOIA requests. The FOIA regulations and fee schedule allow for the charges for file search time at $12.00 an hour for clerical personnel and $19.60 an hour for professional personnel, $19.60 an hour for review time to determine whether records were permitted to be withheld, and $0.10 a page for duplication services. For media requests, Commission regulations at 16 C.F.R. 1015.9(d), provide for a waiver of search and review fees.

Our initial file search and review of the files of the Commission's Directorate for Health Sciences files indices has revealed files that contain thousands of records. We estimate that the processing may require 20 hours of professional file searching and reviewing and the potential release of 15,000 pages of materials. We estimate that the costs to the agency for the processing of your request will likely exceed $1,900.00. The charges to you after the fee waiver

Michael E. Wall, Senior Attorney
Natural Resources Defense Council, Inc.
Page 2

for search and review time are applied will likely exceed $1,500.00, for duplication costs estimated at 15,000 at $0.10 per page. We need you to indicate in writing the extent of your willingness to pay $750.00 that would be initially incurred in the processing of your request and the remaining duplication costs once the processing of your request is complete. You may want to limit your request to reduce the fee estimate. It will expedite the processing and reduce any fees if you would narrow the scope of your request.

According to the Commission's FOIA regulations at 16 C.F.R. § 1015.9(f)(6) and 1015.7, any determination of a fee waiver request may be appealed to the General Counsel of the Commission within thirty (30) days of your receipt of this letter. An appeal must be in writing and addressed to: FOIA APPEAL, General Counsel, ATTN: Office of the Secretary, U.S. Consumer Product Safety Commission, 4330 East West Highway, Bethesda, Maryland 20814-4408.

Sincerely,

Todd A. Stevenson



**NATURAL RESOURCES DEFENSE COUNCIL**

February 19, 2008

**VIA FEDERAL EXPRESS, FACSIMILE, and EMAIL**

Lowell F. Martin, Acting General Counsel
Office of the General Counsel
U.S. Consumer Product Safety Commission
4330 East West Highway
Bethesda, MD 20814-4408
Office: (301) 504-7922
Facsimile: (301) 504-0403
Email: cpsc-os@cpsc.gov

Re:    **Freedom of Information Act Appeal of Fee Waiver Denial on
       Request S7040076: Records Concerning Phthalates in Children's Products**

Dear Mr. Martin,

On behalf of the Natural Resources Defense Council ("NRDC"), we write to appeal the
United States Consumer Product Safety Commission's ("CPSC's" or "Commission's") denial of
a fee waiver of the April 23, 2007 NRDC request for records concerning phthalates in children's
products[1] under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") and CPSC
implementing regulations, 16 C.F.R. part 1015.

**I.    Background**

On April 23, 2007, NRDC filed the above-captioned FOIA request with CPSC seeking
all records since January 1, 1997 that were prepared, received, transmitted, collected and/or
maintained by the CPSC or any of its employees or contractors relating or referring to:  (1) the

---

[1] As explained in NRDC April 23, 2007 letter, the term "records", as used herein and in the
FOIA request, means anything within the meaning of that word or its singular form under the
FOIA.  In particular, the term includes, but is not limited to, all writings (handwritten, typed,
electronic, or otherwise produced, reproduced, or stored) in the possession of the CPSC or its
employees or contractors, including, without limitation, correspondence, minutes of meetings,
memoranda, notes, data, videotapes, audio tapes, emails, notices, telephonic facsimiles, charts,
tables, presentations, orders, agreements, analyses, reports, and filings. The term "records"
includes draft and other non-final documents. For purposes of this request, "records" do include
emails – stored either electronically or in paper form – within the immediate control of any
employee possessing information responsive to this request – but do not otherwise include
emails stored on back-up tapes or other similar long-term, storage devices in a central location.

**www.nrdc.org**    111 Sutter Street, 20th Floor    NEW YORK · WASHINGTON, DC · LOS ANGELES
                    San Francisco, CA 94104
                    TEL 415 875-6100 FAX 415 875-6161

                    100% Postconsumer Recycled Paper

processing of, consideration of, and response to Petition No. HP 99-01, concerning children's products manufactured with polyvinyl chloride; (2) the processing of, consideration of, and response to a June 6, 2001 submission from Rick Hind, Greenpeace Toxics Campaign, to the CPSC concerning vinyl consumer products and use of phthalates in consumer products; (3) any risk assessments concern phthalates conducted by or for, or submitted to, or possessed by, the CPSC; (4) the operations, functions, deliberations, activities, or communication with three identified committees as described in a June 21, 2001 memorandum; (5) any meeting, telephone conversations, or other communications at or through which phthalates, polyvinyl chloride, chemical risks associated with children's toys, peroxisome proliferators, reproductive toxicity, and/or alternatives to phthalates, were discussed, if such meetings, telephone conversations, or other communications occurred between or among any members or employees of CPCS and employees or other representatives of 20 identified groups. *See* Letter from Michael Wall, NRDC, to CPSC (April 23, 2007) ("NRDC April 23, 2007 Letter").[2] NRDC also requested a fee waiver for search and production of the requested records, because disclosure of the information is in the public interest, and alternatively for a partial fee waiver as a media requester. *See id.*

On January 15, 2008, CPSC denied NRDC's request for a full fee waiver under the "public interest exception" pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 16 C.F.R. § 1015.9(f)(4). *See* Letter from Todd A. Stevenson, CPSC, to Michael Wall, NRDC (Jan. 15, 2008) ("CPSC Jan. 15, 2008 Letter). CPSC's January 15, 2008 letter does not provide any rationale for CPSC's denial of a public-interest fee waiver, let alone a reason that comports with the evidence before the Commission and applicable standards of reasoned administrative decisonmaking. Although the CPSC's January 15, 2008 letter states that the CPSC has previously made certain materials available on its web site, NRDC's request encompasses material that the CPSC has never made public. Our April 23, 2007 request amply demonstrates that the requirements for a public interest fee waiver have been met. NRDC accordingly appeals CPCS's denial of the fee waiver under the public interest exception. *See* 5 U.S.C. §552(a)(4)(A)(iii) and 16 C.F.R. § 1015.9(f)(4). This appeal is timely, having been made within 30 days of NRDC's receipt of CPSC's fee waiver denial on January 22, 2008.

## II.    Discussion

CPSC's denial of NRDC's fee waiver request is unlawful. Consistent with FOIA's requirement for a fee waiver, the disclosure requested here is "likely to contribute significantly to public understanding of the operations or activities of the government," 5 U.S.C. § 552(a)(4)(A)(iii), satisfying each of the requirements set forth in CSPC regulations, 16 C.F.R. § 1015.9(f)(5). Courts have repeatedly held that "the public interest exception should be *viewed in an expansive manner.*" *Judicial Watch v. Dep't of Energy*, 310 F. Supp. 2d 271, 291 (D.D.C. 2004) (emphasis added); *see also Judicial Watch v. Rossotti*, 326 F. 3d 1309, 1315 (D.C. Cir. 2003). As outlined in NRDC's original request and discussed in more detail below, NRDC satisfies all of the criteria for a fee waiver under the public interest exception. Thus, CPSC must grant NRDC a full fee waiver. *See* 16 C.F.R. § 1015.9(f)(4). Moreover, CPSC's omission of a

---

[2] NRDC's April 23, 2007 FOIA request is attached to this letter along with a CD-ROM including documents referenced in this letter and in the footnotes to NRDC's April 23, 2007 letter. NRDC's April 23, 2007 letter and referenced documents are hereby incorporated by reference.

basis for its denial of the fee waiver runs contrary to well-established administrative practice requiring agency decisionmakers to, *inter alia*, articulate their reasoning and the evidence on which it rests.

A.    **The subject matter of the records, in the context of this request, specifically concerns identifiable operations or activities of government.**

As explained in our original FOIA request, the subject matter of the records requested pertains to and would reveal "the operations or activities of the government." 16 C.F.R. § 1015.9(f)(5)(i). In particular, these records concern the CPSC's activities with respect to risks posed to children by phthalates in children's products. The information sought also involves CPSC contacts, meetings, or communications with chemical manufactures and other outside entities or individuals concerning phthalates and children's products. The operations or activities of the government at issue include: CPSC's previous processing and consideration of two petitions concerning certain chemicals in children's toys, including phthalates; risk assessments concerning phthalates that have been considered by CPSC; and communications between CPSC and toy manufactures and other industry groups. In other words, the FOIA request seeks information about how CPSC evaluates the safety of phthalates, and how CPSC relies on advice and information from outside entities to conduct this evaluation. Thus, the subject of the request plainly concerns "the operations or activities of the government." 16 C.F.R. § 1015.9(f)(5)(i); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 107-08 (D.D.C. 2006) [hereinafter *CREW*]; *Judicial Watch v. Dep't of Transp.*, Civ. No. 02-566-SBC, 2005 WL 1606915, at *3-4 (D.D.C. July 7, 2005).

B.    **The records to be disclosed are "likely to contribute" to an understanding of specific government operations or activities.**

NRDC is requesting only records that are not already publicly available. Many of the details of CPSC deliberations and other activity with respect to risks posed to children by phthalates in consumer products, including for example the details of meetings with representatives of the chemical and consumer products industries, have not been publicized and are not known to the public. Since such records are not in the public domain, they are likely to be meaningfully informative about CPSC's actions with respect to phthalates. The public release of non-public government records will likely contribute to an understanding of the government activities and operations involved. Information about the process of CPSC's actions with respect to children's products containing phthalates is likely to contribute to the public's understanding of CPSC's operations and activities.[3]

---

[3] A "fee waiver request should be evaluated based on the fact of the request and the reasons given by the requestor in support of the waiver, not on the possibility that the records may ultimately be determined to be exempt from disclosure." *Judicial Watch v. Dep't of Transp.*, 2005 WL 1606915, at *4 (internal citations omitted). Any CPSC predictions about which records will ultimately be released are therefore irrelevant. Moreover, NRDC's request seeks records reflecting or relating to any contacts, meetings, or communications with chemical manufactures and other outside entities or individuals. Such documents are not likely to be exempt from disclosure in any event. *See, e.g., Dep't of Interior v. Klamath Water Users*

Further, CPSC's assertion that "information about phthalates, including meetings, briefing materials and research reports have been made available in the reading room and the website" does not support its denial of the nondiscretionary fee waiver. *See* CPSC Jan. 15, 2008 Letter at 1. Courts have held that "the mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions. *Campbell v. Dep't of Justice*, 164 F.3d 20, 36 (D.C.Cir.1998); *see, e.g., Judicial Watch v. Rossotti*, 326 F.3d 1309, 1314 (waiving fees under public interest exception even when some of the requested information has been released and disseminated to the public through mass media); *Prison Legal News*, 436 F. Supp.2d 17, 24 (D.D.C. 2006) (granting fee waiver even though information was available in reading rooms); *Schrecker v. Dep't of Justice*, 970 F.Supp. 49, 49 (D.D.C.,1997) (granting waiver and stating that information that was previously released to or seen by other individuals is not necessarily available to the public); *Fitzgibbon v. Agency for Int'l Dev.*, 724 F. Supp. 1048, 1051 (D.D.C.1989) (stating that warehousing documents in a public reading room does not make the records accessible to the public). Towards this end, NRDC has searched CPSC's website reading room and reviewed the documents previously provided to NRDC through Latham and Watkins concerning Petition HP 99-1. CPSC's website and documents previously provided do not sufficiently respond to our request. For instance, CPSC has not provided, *inter alia*, notes, meeting transcripts, email communications and other documents that are regularly maintained by administrative agencies and available through FOIA requests. Thus, the requested records have a high "informative value." *See* C.F.R. § 1015.9(f)(5)(iii).

### C.    The disclosure will contribute to the understanding of the public at large.

The disclosure of the requested records will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons. 16 C.F.R. § 1015.9(f)(5)(v). For this requirement, the courts consider "the requestor's ability and intent to effectively convey the information to the public." *Judicial Watch*, 2005 WL 1606915, at 5; *see also CREW*, 481 F. Supp. 2d at 113-16. In the original FOIA request, NRDC has more than sufficiently demonstrated the requisite ability and intent.

NRDC has the expertise, ability, and commitment to effectively convey the requested information obtained to the public at large. *See* 16 C.F.R. § 1015.9(f)(5)(iii). NRDC has longstanding expertise in analyzing and synthesizing government information, and expend ongoing effort to understand, inform the public, and protect children from the health threats posed by phthalates. NRDC publishes multiple publications relating to phthalates and environmental issues that are delivered to hundreds of thousands of readers, as detailed more thoroughly in our original FOIA request. *See* NRDC April 23, 2007 letter at 4-5, CD-Rom Attachments 1-10. Information obtained as a result of this request will be disseminated broadly to a large readership through one or more of these or other publications. As discussed

---

*Protective Ass'n*, 532 U.S. 1, 12 (2001) (communications to and from parties outside the government are not inter-agency or intra-agency documents and may not be withheld under FOIA Exemption 5).

extensively in our initial request, NRDC has a long track record of widely disseminating information obtained through FOIA, to national and local news media, published reports, press statements, and otherwise. *See id.*, CD-Rom Attachments footnotes 2-3 documents.

To satisfy this requirement, NRDC need not "outline a specific plan in addition to describing its methods of publication." *Judicial Watch v. Dep't of Transp.*, 2005 WL 1606915, at 5. To do so would amount to "pointless specificity." *Id.* (internal quotation omitted). Courts have granted fee waivers for requesters with far less robust distribution capabilities than NRDC in this case. *See, e.g., Ctr. for Food Safety v. U.S. Dep't of Agric*, Civ. No. 04-1324 (RMU) (D.D.C. Feb. 7, 2005) (Memorandum Opinion overturning USDA's denial of fee waiver).

The audience of hundreds of thousands that NRDC routinely reaches through its newsletters, magazine, and email alerts is not a "narrow segment of interested persons." NRDC also has proven its ability to disseminate information through national and international media outlets – beyond its own publications – as outlined in a dozen examples in our initial request, further demonstrates that disclosure will contribute to the understanding of the public at large. *See* NRDC April 23, 2007 letter at 4-5, CD-Rom Attachments footnotes 4-5 documents. As detailed in NRDC's April 23, 2007 letter, the intensity of media coverage concerning children's potential exposure to, and health risks from, endocrine disruptors in children's products demonstrates public curiosity and alarm concerning phthalates in children's products and demonstrates that disclosure will contribute to the understanding of the public at large. *See id.*

Since submitting the FOIA request, NRDC continues to research and disseminate information to the public regarding phthalates and children's products. For example, in September 2007, NRDC investigated 14 common air fresheners and reported that 12 air fresheners contained phthalates and failed to list phthalates on their labels. The NRDC report also discussed the threat of phthalates to children and unborn babies.[4] This report was disseminated through numerous media sources, such as CBS News, Time.com/CNN, and Minneapolis Star-Tribune.[5] More recently, on February 15, 2008, NRDC's Simple Steps.org discussed a new study that found that infants and toddlers who used baby lotions, shampoos, and powders have high concentrations of phthalates in their bodies that may disrupt hormone functioning and can cause abnormalities in sexual organs and infertility, particularly in boys.[6]

---

[4] Solomon, G., *Protect Your Family from the Hidden Hazards in Air Fresheners* (Sept. 2007) http://www.nrdc.org/health/home/airfresheners/fairfresheners.pdf (included in CD Rom Attachments NRDC Feb. 19, 2008 letter documents).

[5] CBS news: *Air Fresheners May Pose Hazard*, Interview with Linda Greer, NRDC (Sept. 20, 2007)http://www.cbsnews.com/sections/i_video/main500251.shtml?id=3280854n?source=search _video; Time.com/CNN: *How "Fresh" Is Air Freshener?* (Sept. 24, 2007) http://www.time.com/time/health/article/0,8599,1664954,00.html; Minneapolis Star-Tribune: *Potential hazards spur Walgreens to pull air fresheners* (Sept. 26, 2007) http://www.startribune.com/local/11590891.html (included in CD Rom Attachments).

[6] Beinecke, F., Simple Steps.org (Feb. 15, 2007) http://www.simplesteps.org/index.php?option=com_rssviewer&Itemid=49&link=read_the_label _before_you_run.html (included in CD Rom Attachments).

Thus, NRDC had not only demonstrated a general ability to communicate with broad sections of the public, NRDC has been actively engaged in conveying information regarding phthalates and children's products to the public at large during the pendency of this very FOIA request.

**D.    The disclosure will contribute "significantly" to public understanding of government operations or activities, as compared to the level of understanding prior to the disclosure.**

NRDC's request seeks non-publicly available information that is "likely to contribute significantly to public understanding of government operations or activities." 16 C.F.R. § 1015.9(f)(5)(iv). The records requested and disseminated by NRDC will help illuminate the process by which the CPSC makes critical decisions regarding the safety of and public health risks associated with children's toys. Disclosure of CPSC's contacts, meetings, or communications with the toy and chemical industry, members of Congress or their staff, the media, and other interested individuals and organizations will contribute significantly to public understanding of CPSC's actions with respect to phthalates in children's products and toys. Prior to CPSC's disclosure of such records, the public has no understanding of the nature, extent, and content of these communications.

As explained above and in our original request, CPSC has denied petitions requesting rulemaking regarding phthalates in children's toys. The basis for CPSC denial and the extent to which CPSC has been heavily influenced in its decision by communications with or lobbying by the chemical companies, are matters of clear public interest. NRDC seeks documents, currently shielded from public review, that relate to CPSC's communications with the industry and other third parties about phthalates and children's toys. These documents would contribute "significantly" to the public's understanding of an important health matter of national relevance, and the basis for CPSC's decision on the question of necessary protections for children's health.

**E.    NRDC has absolutely no commercial interest in disclosure of the information.**

As explained in our original request, NRDC does not seek the requested records for any commercial use. *See* 16 C.F.R. § 1015.9(v) & (vi). NRDC does not have any commercial interest that would be furthered by the requested disclosure. As a non-profit, public interest environmental and public health organization, NRDC does not have any commercial, trade, or profit interest. *See id.* "Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'" *Judicial Watch v. Rossotti*, 326 F. 3d at 1312 (internal citation omitted). NRDC's interest in obtaining the requested materials is to serve the public interest by disclosing non-public information about CPSC's actions concerning phthalates and communications with third parties with respect to children's products containing phthaltes. Release of the requested records will serve to inform the public about this topic of interest to many, and will not advance any commercial, trade, or profit interests of NRDC in any way.

**F.     NRDC has expressed its willingness to pay fees under protest.**

As we stated in our original request, in order to prevent delay in CPSC's provision of the requested records, NRDC will, if necessary and under protest, pay fees up to three hundred dollars ($300) in accordance with 16 C.F.R. § 1015.9.  However, CPSC's requirement of "advance payment" seems contrary to the regulatory provisions of 16 C.F.R § 1015.9(g)(3) reflecting failure to pay by the requester.  *See* CPSC Jan. 15, 2008 Letter at 2.  In any case, any payment by NRDC will not constitute any waiver of NRDC's right to seek judicial review of any denial of its fee waiver request.

**G.     The OPEN Government Act supports a fee waiver.**

In addition to the reasons stated above, the recent FOIA Amendments under the Openness Promotes Effectiveness in our National Government Act of 2007 ("OPEN Government Act") further supports NRDC's request for a full fee waiver—especially given the over seven-month delay of CPSC's response.  The OPEN Government Act aims to improve response time to FOIA requests by barring agencies from collecting search or duplication fees when agencies fail to respond to requests within the required 20 days.  "An agency shall not assess search fees…if the agency fails to comply with any time limit…."  110 P.L. 175 (including waiver of duplication fees for records that are not sought for commercial use).  The clear purpose of this statutory provision is to force agencies to respond timely, and to disallow fee assessment where an agency does not do so.

NRDC submitted the present FOIA request to CPSC on April 23, 2007.  Despite several inquiries by NRDC, CPSC did not provide any response until January 15, 2008, and CPSC still has not provided the records requested by NRDC, although the statutory response deadlines have long since passed.  Applying the OPEN Government Act to the facts of CPSC's extraordinary and unexplained delay would require a complete fee waiver for this pending request even if NRDC did not satisfy all the criteria for the public interest exception under pre-existing law.

**III.     Conclusion**

For these reasons, NRDC asks that CPSC immediately grant a full fee waiver for the records requested.  If you have any questions regarding this appeal, please feel free to contact us at 415-875-6100.

Sincerely,

Anjali I. Jaiswal
Natural Resources Defense Council

cc:     Todd A. Stevenson, CPSC (via Federal Express)
        CPSC Washington D.C. 20207 (via U.S. Mail Overnight)

Enclosures (in hard copy and on CD-ROM)





# Protect Your Family from the Hidden Hazards in Air Fresheners

*Our work raises concerns that should be followed up immediately by thorough government testing of these products. Meanwhile, consumers should be aware that the pretty label and sweet scent may mask something much less pleasant.*

Gina Solomon, M.D., M.P.H., Senior Scientist, NRDC

For more information, please contact **Gina Solomon** at (415) 875-6100

Read the full issue paper *Clearing the Air: Hidden Hazards in Air Fresheners* at **www.nrdc.org/policy**.



Air fresheners have become a staple in many American homes and offices, marketed with the promise of creating a clean, healthy, and sweet-smelling indoor atmosphere. But many of these products contain phthalates (pronounced *thal-ates*)—hazardous chemicals known to cause hormonal abnormalities, birth defects, and reproductive problems. NRDC's independent testing of 14 common air fresheners, none of which listed phthalates as an ingredient, uncovered these chemicals in 86 percent (12 of 14) of the products tested, including those advertised as "all-natural" or "unscented."

To protect consumers, government action to conduct more thorough tests and enact basic measures to limit exposure to phthalates is urgently needed. Until consumers are given the information they need to make informed decisions about whether to use these products, it is best to avoid using air fresheners—especially in places where there are children or pregnant women.

## Phthalates: Health Hazards in Many Forms

Phthalates are used in many common consumer products—to soften plastics in children's toys, as sealants and adhesives in nail polish, and in perfumes and air fresheners. When people use air fresheners, the phthalates are released into the air where they may be inhaled or may land on the skin and be absorbed. Once these chemicals enter the bloodstream, they can alter hormone levels and cause other health problems.

Phthalates are known to interfere with production of the male hormone, testosterone, and have been associated with reproductive abnormalities. Numerous animal studies have linked prenatal exposure to certain phthalates with decreases in testosterone, malformations of the genitalia, and reduced sperm production. The State of California notes that five types of phthalates—including one that we found in air freshener products—are "known to cause birth defects or reproductive harm." Phthalate exposure in indoor environments has also been associated with allergic symptoms and asthma.

## Improving Your Home's Air Quality and Safety

Air fresheners are not a solution for poor air quality and cannot substitute for good ventilation. The best solution is to open windows to bring in fresh air or to use fans to maintain air circulation.



# Protect Your Family from the Hidden Hazards in Air Fresheners

If you decide to use an air freshener, however, careful selection may reduce phthalate exposures to you and your family. The table shows which brands we tested contained phthalates.

## Stronger Regulations Are Needed to Protect Consumers

There is a clear need for closer monitoring of the types of chemicals manufacturers are allowed to put into air fresheners—and for consumers to be provided with better information about what is in the products they do purchase. NRDC recommends the following immediate steps:

■ Consumers should avoid using air fresheners, but when necessary should use products with the lowest levels of phthalates to limit exposures to these potentially dangerous chemicals.

■ The Environmental Protection Agency should require manufacturers to test and submit data on phthalates found in air fresheners, the extent of human exposure to phthalates in air fresheners, the health effects of the exposure, and the toxicity, persistence, sensitization, and other health effects of inhaling chemicals in air fresheners.



■ The Consumer Product Safety Commission should ban phthalates in consumer products and should require that manufacturers provide ingredient information on the label.

According to studies done by the U.S. Centers for Disease Control, the majority of the U.S. population is routinely exposed to at least five different phthalates. Although the measured levels in the human blood stream are small, they are significant because a mixture of phthalates at low doses can act in an additive manner to cause the same health hazards as just one phthalate at a higher dose. The difficulty of avoiding general exposure is all the more reason to eliminate further exposure in an environment over which you have much more control—your home.

## Toxic Phthalates Found in Air Fresheners

The chemicals below were found in at least one of the 14 air fresheners NRDC tested.

■ **Di-ethyl Phthalate (DEP):** Has been associated with changes in hormone levels and genital development in humans.

■ **Di-n-butyl Phthalate (DBP):** Is recognized as a reproductive toxicant by the National Toxicology Program and the State of California, and can lead to changes in genital development.

■ **Di-isobutyl Phthalate (DIBP):** DIBP metabolites have been associated with changes in male genital development.

■ **Di-methyl Phthalate (DMP):** Inconclusive evidence has shown reproductive toxicity in animal studies.

■ **Di-isohexyl Phthalate (DIHP):** Limited toxicity testing has shown that DIHP is probably a developmental and reproductive toxicant.



| Phthalate Level in Air Fresheners Tested | | |
|---|---|---|
| Brand | Level of Toxic Phthalates Found | Phthalates Found |
| Air Wick Scented Oil | ◕ | 0.75 ppm DBP; 6.3 ppm DEP; 1.6 ppm DIBP; 2.1 ppm DIHP |
| Citrus Magic | ○ | 0.25 ppm DBT |
| Febreze Air Effects Air Refresher | ◕ | 0 |
| Febreze NOTICEables Scented Oil | ◕ | 0.19 ppm DBP; 1.5 ppm DIBP |
| Glade Air Infusions | ◕ | 1.5 ppm DEP |
| Glade PlugIn Scented Oil | ◕ | 4.5 ppm DBP |
| Lysol Brand II Disinfectant | ○ | 0.12 ppm DBP; 0.49 ppm DEP |
| Oust Air Sanitizer Spray | ◕ | 5.7 ppm DEP |
| Oust Fan Liquid Refills | ○ | 0.78 ppm DEP; 0.24 ppm DIBP |
| Ozium Glycol-ized Air Sanitizer | ● | 360 ppm DEP; 0.15 ppm DMP |
| Renuzit Subtle Effects | ◑ | 0 |
| Walgreens Air Freshener Spray | ● | 1,100 ppm of DEP |
| Walgreens Scented Bouquet Air Freshener | ● | 7,300 ppm of DEP; 0.47 ppm of DBP; 6.5 ppm DMP |
| Walgreens Solid Air Freshener | ● | 23 ppm DEP |

LEGEND:  ● Contained highest level of phthalates (more than 10 ppm of total phthalates)
 ◕ Contained moderate level of phthalates (between 1 and 10 ppm of total phthalates)
 ○ Contained trace level of phthalates (less than 1 ppm of total phthalates)
 ◑ Contained no phthalates



## NRDC
THE EARTH'S BEST DEFENSE

© Natural Resources Defense Council  Sept 2007    **www.nrdc.org/policy**    ♲ Printed on recycled paper

CPSA 6 (b)(1) Cleared
No Mfrs/Prvt'blrs of
Products Identified
Except ed by
Firms Notified,
Comments Processed.

## LOG OF <u>CLOSED</u> MEETING

**SUBJECT:**  Peroxisome Proliferator (P2) Workgroup (Phthalates)

**DATE:**  June 21, 2001

**TIME:**  9:30 a.m. to 3:30 p.m.

**PLACE:**  Wyndham Washington Hotel, 1400 M Street, NW, Washington, DC

**ENTRY SOURCE:**  Michael A. Babich, HS

**COMMISSION REPRESENTATIVE:**  Michael A. Babich, HS

**NON-COMMISSION REPRESENTATIVES (P2 Workgroup):**  Karl Baetke, EPA; Ronald Brown, FDA; Moire Robertsen Creek, Valent USA; Raymond David, Eastman Kodak; Vicki Dellarco, EPA; Jeri El Hage, FDA; Penny Fenner-Crisp, ILSI; Roger Hawks, BASF; James Klaunig, University of Indiana; David Lai, EPA; Jeff Lawrence, Merck; Jeffrey Peters, Penn State University; James Popp, Dupont; Ruth Roberts, Syngenta; Vanessa Vu, EPA.

**Summary:**

This meeting was organized by the International Life Sciences Institute (ILSI) for the U.S. Environmental Protection Agency (EPA). Three committees were formed, including a Steering Committee, a workgroup on Peroxisome Proliferators, and a workgroup on Generic Criteria for assessing the human relevance of animal tumors. Participants included scientists from federal agencies, industry, and academia. The three committees met together in a morning session, then separately for the remainder of the day. Dr. Babich participated in the Peroxisome Proliferator (P2) workgroup. The purpose of the P2 workgroup is to review the state of the science on the human relevance of animal tumors induced by peroxisome proliferators, such as phthalate esters. The P2 workgroup plans to complete a final report in about one year. The report will be published in a peer-reviewed scientific journal. The workgroup plans to meet again later this year.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
NATURAL RESOURCES DEFENSE COUNCIL,    )
                                                                          )
                   Plaintiff,                                       )
                                                                          )          Civil No. 08-1312 HHK
                   v.                                                 )
                                                                          )
UNITED STATES CONSUMER PRODUCT        )
SAFETY COMMISSION,                               )
                                                                          )
                   Defendant.                                    )
_____)

## [PROPOSED] ORDER

After full consideration of plaintiff NRDC's Motion for Summary Judgment and the

entire file and record in this action, IT IS HEREBY ORDERED that plaintiff's Motion for

Summary Judgment is GRANTED.

Defendant the Consumer Product Safety Commission shall grant plaintiff a public

interest fee waiver on its April 23, 2007 Freedom of Information Act request, and the

Commission shall produce all responsive records within twenty days of the date of this order.


IT IS SO ORDERED.


_____          Dated: _____
Hon. Henry H. Kennedy
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served a true and correct copy of this **Proposed Order**

via first-class mail on this date, August 20, 2008, to the following counsel:

Cheryl Falvey, General Counsel
U.S. Consumer Product Safety Commission
4330 East West Highway
Bethesda, MD 20814

Civil Process Clerk
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW
Washington, DC 20530


*/s/ Aaron Colangelo*
Aaron Colangelo